```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

| | | |
|---|---|---|
| **ARTHUR INGRAM, III** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-82** |
| | * | |
| **EXPRESS ENERGY SERVICES OPERATING, LP** | * | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 34), submitted by Defendant Deltide Energy Services, L.L.C. ("Deltide"). In response, Plaintiff Arthur Ingram ("Plaintiff") submitted a Memorandum in Opposition (Rec. Doc. No. 38) to Deltide's Motion. Subsequently, Deltide filed a Reply Memorandum in Support its Motion for Summary Judgment (Rec. Doc. No. 42). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Deltide's Motion for Summary Judgment (Rec. Doc. No. 34) is **DENIED.**

## PROCEDURAL HISTORY

On August 10, 2010, Plaintiff was working as a rigger for Express Energy ("Express") on an offshore platform located at High Island 135. (Rec. Doc. No. 38-1 at 1). The platform was located on the Outer Continental Shelf in the Gulf of Mexico, approximately five hours from Galveston, Texas. *Id*. Pyramid GOM, Inc., contracted Express to perform a "plug and abandon" operation on the platform. (Rec. Doc. No. 34-1 at 2). At the time of the incident in question, Plaintiff was working a tour on the platform with three other

Express employees.[1] *Id.*

Deltide was a co-independent contractor hired by ACS to perform mechanical cutting on the same offshore platform.[2] *Id.* On August 10, 2010, two Deltide employees, Supervisor Darren Wallace and Rick Clawson, were working on the platform. *Id.*

During that day, Plaintiff and another Express employee, Scotty Brien, assisted Darren Wallace, a Deltide employee, in moving a slip plate to continue work on the well.[3] (Rec. Doc. No. 38-1 at 2). Plaintiff alleges that at the time, in accordance with Supervisor Randy Hilbun's testimony of the same, Express was on the platform "to assist Deltide in doing its job."[4] *Id.* at 4. Plaintiff further alleges that Brien and Deltide's Supervisor, Wallace, discussed how the 300 lb. plate would be moved beforehand. (Rec. Doc. No. 38 at 4). While the three men were moving the plate, Brien and Wallace lost their grip, and the plate slipped out of their hands. *Id.* at 5. Plaintiff claims the men dropped the plate because

---

[1] Supervisor Randy Hilbun, (Rec. Doc. No. 38-1 at 6), and employees Mike Howard, and Scotty Brien were also working on the platform at the time. (Rec. Doc. No. 34-1 at 2).

[2] "Mechanical cutting" involves removing caissons from abandoned wells by mechanical means. (Rec. Doc. No. 38 at 3).

[3] Plaintiff claims that Deltide "enlisted" his assistance to manually move the slip plate. (Rec. Doc. No. 38-1 at 2). However, Deltide asserts it "did not supervise [Plaintiff], no one from Deltide told him to move the slip plate and he received no instruction from Deltide on how to do the job."(Rec. Doc. No. 42 at 6).

[4] Plaintiff asserts that "[a]n ongoing arrangement existed between Deltide and Express Energy whereby Express Energy would provide rigging assistance to Deltide under its direction." (Rec. Doc. No. 38-1 at 3).

2

Wallace did not use proper lifting techniques. *Id.* at 5, 7. Because he was still supporting the 300 lb. plate when the other men dropped it, Plaintiff claims he sustained a back injury. (Rec. Doc. No. 38-1 at 6).

Plaintiff originally filed suit on January 14, 2011, against his employer, Express. Rec. Doc. No. 34-1 at 2). In his Complaint (Rec. Doc. No. 1), Plaintiff sought, *inter alia*, wages and maintenance and cure, claiming seaman status under the Jones Act. (Rec. Doc. No. 34-1 at 2). On June 27, 2011, Plaintiff filed a Supplemental and Amending Complaint (Rec. Doc. No. 10), listing Deltide as a defendant. On February 1, 2012, Express filed a Motion for Summary Judgment. (Rec. Doc. No. 20). Plaintiff did not oppose the Motion, which was granted by this Court on February 13, 2012. (Rec. Doc. No. 22).

On June 6, 2012, Deltide moved for summary judgment. (Rec. Doc. No. 34). Plaintiff subsequently filed a Memorandum in Opposition (Rec. Doc. No. 38) to Deltide's Motion for Summary Judgment on June 29, 2012. On July 9, 2012, Deltide filed its Reply (Rec. Doc. No. 42).

### CONTENTIONS OF MOVANT-DELTIDE

Deltide contends it is entitled to summary judgment, because no genuine issues of material fact exist. Specifically, Deltide asserts that it did not owe a duty to Plaintiff and that it did not breach any duty to Plaintiff under Louisiana or Texas law. (Rec.

Doc. No. 34 at 5). For these reasons, Deltide requests that this Court grant its Motion for Summary Judgment. *Id.* at 8-9.

In its Reply, Deltide maintains its assertion that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. (Rec. Doc. No. 42 at 2). Deltide relies on witness testimony to support the contention that its employee did not supervise, control, or instruct Plaintiff with respect to moving the plate. *Id.* at 8.

### CONTENTIONS OF RESPONDENT-PLAINTIFF

Plaintiff contends that several genuine issues of material fact exist and that Deltide is not entitled to summary judgment. (Rec. Doc. No. 38-1). Plaintiff, also relying on witness testimony, asserts that Deltide had authority and enlisted Express employees to move a slip plate. *Id.* at 4-5. Further, Plaintiff asserts that a Deltide employee negligently dropped one end of the 300 lb. slip plate while he was still holding it, and the shift in weight caused Plaintiff to sustain a back injury. *Id.* at 6. For these reasons, Plaintiff claims that Deltide owed him a duty of reasonable care and that Deltide breached that duty. *Id.* at 6-7. Accordingly, Plaintiff requests that Deltide's Motion for Summary Judgment be denied. *Id.* at 7.

### LAW AND ANALYSIS

**A. Standard of Review**

Summary judgment is proper if the pleadings, depositions,

interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Summary judgment is not proper at this time because there are genuine issues of material fact concerning whether Deltide, or its employee(s), instructed Plaintiff to help move the slip plate.**

First, there are genuine issues of material fact regarding whether Deltide breached its duty of reasonable care to Plaintiff. This question is largely contingent upon a determination as to whether Deltide instructed or encouraged Plaintiff to move the slip

plate at issue.  As such, if Deltide instructed Plaintiff, during the course of them working together, to assist in lifting the slip plate then a duty was created. Deltide submits that Texas law is applicable[5] and that such law holds that "a person is under no duty to control the conduct of another even if he has the practical ability to exercise such control"[6] and " . . . in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another, even if there exists a practical ability to do so."[7] Moreover, we recognize that pursuant to Texas law "[a] duty arises if the general contractor retains control over the manner in which the independent contractor performs its work." *Guidry v. Fairways Offshore Exploration, Inc.*, 2008 U.S. Dist. LEXIS 78884 (S.D. Tex. Sept. 2008) (citing *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d at 783 (Tex. 2001)). We further recognize that "[t]o prove control in absence of a contractual agreement, the employee must show the contractor 'actually exercised control over the manner in which the independent contractor's work was performed.'" *Id*.  Here, that is exactly what the factual dispute is centered upon.

Plaintiff contends that there was an "ongoing arrangement . . .

---

[5] Deltide contends that Texas law is applicable because the platform at issue was located approximately five hours outside of Galveston, Texas.  (Rec. Doc. No. 34-1).

[6] *Whitney Crowne Corp. v. George Distribs.*, 950 S.W. 2d 82 (Tex. App.- Amarillo, 1997).

[7] *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex., 1993).

. between Deltide and Express Energy whereby Express Energy would provide rigging assistance to Deltide *under its direction*." (Rec. Doc. No. 38, at 3)(emphasis added).  Plaintiff even proffers testimony from Supervisor Randy Hilbun, in which he testified that "[Deltide] tell[s] us what they've got. They tell us they're going to go in there and cut this and such and such . . . If we ain't never worked with it, he tells us how he wants it rigged up."[8] Moreover, Plaintiff proffers the testimony of Deltide tool supervisor, Bradley Darren Wallace, in which he testifies that the Express Energy employees were there "solely to assist Deltide," and that Plaintiff was involved with the lifting of the slip plate because "he was on the crew that was assisting [Wallace] in doing what [they] had to do to do the job."[9]  Finally, Plaintiff submits

---

[8] Randy Hilbun's testimony provides, in pertinent part:

    Q: Okay. You're saying Deltide tells you what to do and you do it?
    A: And they tell us what they've got.  They tell us they're going to go in there and cut this and such and such.  We need to rig this up.  We go out there and rig it up.  If we ain't never worked with it, he tells us how he wants it rigged up.  (Rec. Doc. No. 38-4 Exh. 4, p. 34; 4-10).

[9] Bradley Darren Wallace's testimony provides, in pertinent part:

    Q: Okay. But I guess the more precise question is that this is a standard operation; correct? This moving of the slip plate and the slip bowl and all that stuff?
    A: Yes, sir.
    Q: Okay. How did Arthur come to be involved in [the] lifting of the slip plate?
    A: Because he was on the crew that was assisting me in doing what he had to do to do the job.
    Q: Were those Express guys there solely to assist Deltide doing their job?
    A: Solely to assist Deltide?
    Q: I'm sorry - - yeah, yeah solely to assist Deltide.
    A: At this point because we was working, yeah they was assisting us.
    Q: Okay. So they're proving assistance to Deltide as needed?
    A: Yes, sir.
(Rec. Doc. No. 38-3, Exh. 3, p.35; 3-24).

an Express Energy Services Initial Incident Report,[10] which contains an entry that reads one of the reasons for the incident was "conflicting instruction between Express Supervisor & Deltide personnel."[11] As such, this evidence supports Plaintiff's argument that he was directed to assist in the lifting of the plate.

Alternatively, Deltide submits that Hilbun's testimony supports its contention that "there is no relationship between Express and Deltide."(Rec. Doc. No. 42, at 2; Rec. Doc. No. 42-1, Exh. 1, p. 42:6-8). Here, both parties submit that the respective deponent's testimony supports their contradictory positions.

While we agree that as a general matter "a person is under no duty to control the conduct of another even if he has the practical ability to exercise such control,"[12] here there are minimally sufficient genuine issue of facts because of the record evidence "of a relationship between the parties giving rise to the right of control."[13] Furthermore, there is record evidence attesting to Deltide "actually exercising control over the manner in which the

---

[10] Deltide submits that "this form is inadmissible on summary judgment as it is hearsay and is without foundation. Deltide moves to strike this document." (Rec. Doc. No. 42, at 7). However, Deltide has not filed a motion for such, and neither does the federal electronic case management system include such an entry. Therefore, this "motion" will not be considered at this time.

[11] Moreover, the Court notes that the incident report contains an explanation entry noting as a cause "picking up more than 50 pounds contrary to company policy." (Rec. Doc. No. 38-5). This arguably goes toward a breach of the reasonable duty of care Deltide owed to Plaintiff. However, the Court will not address that issue at this time.

[12] *Whitney Crowne Corp. v. George Distribs.*, 950 S.W. 2d 82 (Tex. App.-Amarillo, 1997).

[13] *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex., 1993).

[Plaintiff's] work was performed." *See Guidry v. Fairways Offshore Exploration, Inc.*, 2008 U.S. Dist. LEXIS 78884 (S.D. Tex. Sept. 2008) (citing *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d at 783 (Tex. 2001)). However, Deltide disputes the existence or exercise of such control and even relies upon some of Plaintiff's witnesses' testimony for the same.

Given that Plaintiff contends and proffers record evidence supporting his contention that he was directed to assist in lifting the slip plate at issue, and Deltide denies having authority or exercise of such authority to do such, summary judgment is not appropriate at this time.

Accordingly, **IT IS ORDERED** that Deltide's Motion for Summary Judgment (Rec. Doc. No. 34) is **DENIED**.

New Orleans, Louisiana, this 26th day of July, 2012.

_____
   UNITED STATES DISTRICT JUDGE